UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X

UNITED STATES OF AMERICA,

                                    **MEMORANDUM AND ORDER**

       - against -

                                    92-CR-767 (KAM)

CHARLES WATTS,

                      Defendant.

-----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

On May 14, 1993, after a jury found him guilty of multiple offenses, Charles Watts ("Mr. Watts") was sentenced by the late Judge Sterling Johnson, Jr., to 1,107 months—or 92 years and 3 months—in prison for offenses committed in 1990, when Mr. Watts was twenty years old.  (*See* ECF Nos. 62, Judgment; 86, Statement of Reasons.)  Mr. Watts has been incarcerated since June 10, 1992, and has been serving his sentence at the United States Penitentiary ("USP") Allenwood, in Pennsylvania.  Before the Court is Mr. Watts's motion for compassionate release and to modify his prison sentence under the First Step Act.[1]  (*See* ECF No. 103, Watts Motion for Compassionate Release ("Watts Mot.").)  At the time of Mr. Watts's sentencing, defense counsel for Mr. Watts expressed

---

[1] The First Step Act, signed into law in 2018, amends what has become known as the "compassionate release" statute, which creates an exception to the general prohibition against modifying a term of imprisonment once it has been imposed.  *See* 18 U.S.C. § 3582(c).

concerns regarding the mandatory consecutive sentences that the Court was required to impose.  In 1993, Mr. Watts's violations of 18 U.S.C. § 924(c), mandatory minimum sentences totaling eighty-five years, were "stacked" and were required to be served consecutively, leaving Mr. Watts to "fac[e] basically a life sentence on the gun counts" alone.  (ECF No. 103-13, May 14, 1992, Watts Sentencing Transcript ("Sentencing Tr.") at 5.)

Mr. Watts moves this Court for a modification of his sentence on the following extraordinary and compelling bases: his sentence is unjustifiably long because of the "stacking" of the § 924(c) counts of conviction; his young age and lack of criminal history when he was sentenced; his rehabilitation while in custody; the serious health risks and harsher conditions of confinement resulting from the COVID-19 pandemic, his age, and medical conditions; his sentence of over ninety-two years represents an unwarranted disparity; and that the factors set forth in 18 U.S.C. Section 3553(a) warrant relief.  (*See* ECF Nos. 103, Watts Mot; 118, Watts Supplemental Authority ("Watts Supp. Auth."); 121, Watts Supplemental Sentencing Memo ("Watts Sentencing Mem.").)  Specifically, Mr. Watts moves this Court to reduce his sentence to "time served", pursuant to 18 U.S.C. § 3582(c)(1)(A).  The Government opposes Mr. Watts's motion.  (ECF Nos. 106, Government's Opposition to Compassionate Release ("Gov. Opp."); 120, Government's Supplemental Authority ("Gov.

Supp. Auth."); 123, Government's Supplemental Sentencing Memo

("Gov. Sentencing Mem.").)  For the reasons herein, Mr. Watts's

motion is GRANTED.

### Background

Over a seven-week period, between July and August

1990, Mr. Watts, then twenty years old, and a childhood friend,

Shawn Daniels, committed five robberies of four banks and one

shoe store, during which both Mr. Watts and Mr. Daniels used

firearms.  Mr. Watts was arrested and detained in custody on

June 10, 1992, when he was twenty-two years old.  (*See* ECF No.

103, Watts Mot. at 5.)  Mr. Daniels pleaded guilty and later

testified as the government's witness at Mr. Watts's trial.

(ECF Nos. 103-12, Pre-sentence Investigation Report at 7; 103-

13, Sentencing Tr. at 3.)  Mr. Watts exercised his

constitutional right to trial.

On February 2, 1993, Mr. Watts was convicted by a jury

of one count of conspiring to commit armed bank robbery, in

violation of 18 U.S.C. § 371; four counts of committing armed

bank robbery, in violation of 18 U.S.C. § 2113(d); one count of

conspiring to commit Hobbs Act robbery, in violation of 18

U.S.C. § 1951; one count of committing Hobbs Act robbery, also

in violation of 18 U.S.C. § 1951; and five counts of using a

firearm during a crime of violence, in violation of 18 U.S.C. §

3

924(c)(1).  (*See* ECF No. 106, Gov. Opp. at 2; *see also* 103,
Watts Mot. at 5-6.)

Mr. Watts was sentenced by Judge Johnson on May 14,
1993, to 1,107 months (92 years and 3 months).  Judge Johnson
considered the federal sentencing guidelines range of 70 to 87
months for Mr. Watts's underlying convictions on the four armed
bank robberies, conspiracy to commit armed bank robberies, Hobbs
Act robbery, and conspiracy to commit a Hobbs Act robbery; and
the statutory mandatory 18 U.S.C. § 924(c) "stacking provision"
for his five convictions of using a firearm during those
underlying robberies.  (*See* ECF No. 103-13, Sentencing Tr. at 6-
8.)  Judge Johnson sentenced Mr. Watts as follows: 60 months
imprisonment on each of Count 1 and 7 (conspiracy to commit
armed bank robberies (Count 1) and for the first § 924(c) using
a firearm during a crime of violence conviction (Count 7)); 87
months on each of Counts 6, 8, 10, 12 (the underlying bank
robberies), 14, 15  (conspiracy to commit a Hobbs Act robbery of
a shoe store (Count 14) and the shoe store robbery (Count 15));
and 240 months on each of Counts 9, 11, 13, 16 (the four other §
924(c) convictions).  The terms of imprisonment imposed on Count
1, 6, 8, 10, 12, 14, 15 (the underlying armed bank robberies,
conspiracy to commit armed bank robberies, Hobbs Act robbery,
and conspiracy to commit a Hobbs Act robbery) were to run
concurrently for a total of 87 months.  The sentences on the §

4

924(c) counts totaled 1020 months: Counts 7 (60 months), 9 (240
months), 11 (240 months), 13 (240 months), and 16 (240 months)
(use of a firearm during a crime of violence) and were to be
served consecutively after the concurrent 87 month sentences
imposed on Counts 1, 6, 8, 10, 12, 14, and 15 for a total of
1107 months.  Mr. Watts was further sentenced to a supervised
release term of 3 years on each of Counts 1, 7, 9, 11, 13-16,
and 5 years on each of Counts 6, 8, 10, and 12, to run
concurrently for a total of 5 years of supervised release; and a
$600.00 special assessment.  (*See* ECF Nos. 62, Judgment; 86,
Statement of Reasons; 103-13, Sentencing Tr. at 6-8.)  Judge
Johnson found Mr. Watts unable to pay a fine or restitution and
did not impose those monetary penalties.  (*Id.*)

        Although Mr. Watts had no prior criminal convictions,
his use of a firearm during his offenses resulted in enhanced,
mandatory consecutive ("stacked") sentences, totaling 85 years
(1020 months), under the formerly applicable version of 18
U.S.C. § 924(c), in addition to his concurrent sentences of 60
and 87 months for the underlying armed bank robberies,
conspiracy to commit armed bank robberies, and Hobbs Act
offenses (shoe store robbery and conspiracy to commit Hobbs Act
robbery).  18 U.S.C. § 924(c)(1988).  Specifically, the § 924(c)
stacking statute in effect required the Court to impose a 5-year
term, plus four consecutive 20-year terms, for a total of 85

years, for the five § 924(c)(1) counts (Counts 7, 9, 11, 13, and 16) — each term to be served consecutively after the concurrent 60 and 87-month sentences. Absent the mandatory statutory "stacking" provision of § 924(c) for the firearm counts, for the remaining counts, Judge Johnson had discretion to sentence Mr. Watts according to the federal sentencing guideline range of 70 to 87 months[2], and he imposed the higher end of the range of 87 months. The stacking provision thus added 85 years, to be served consecutively to the 60 and 87 month concurrent sentences on the other underlying counts.

In total, Mr. Watts has been serving a sentence of ninety-two years and three months; he has been incarcerated for over thirty years. (ECF No. 103, Watts Memo at 1.) Mr. Watts's current estimated projected release date is December 2072. (ECF No. 88, Watts *Pro Se* Motion for Compassionate Release ("Watts *Pro Se* Mot.") at 2.) As will be discussed further below, the stacking provisions in effect *today* would require Courts to impose one additional 5-year term for each of the § 924(c)(1) counts, and a minimum of 25 years for each *subsequent* conviction, but only if the first conviction is "final" at the time of the subsequent convictions. 18 U.S.C. § 924(c)(2018).

---

[2] At the time of Mr. Watts's sentencing in 1993, the Sentencing Guidelines were considered mandatory.

Mr. Watts submitted a request for compassionate release to the Warden of USP Lee in Pennington Gap, Virginia in November 2020, which was denied in December 2020.  (ECF No. 103, Watts Mot. at 3.)  On December 31, 2020, Mr. Watts filed a *pro se* motion to Judge Johnson for a sentence reduction under 18 U.S.C. § 3582(c), as modified by the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239, or a recommendation to the Federal Bureau of Prisons ("BOP") for an immediate transfer to home confinement under 18 U.S.C. § 3624(c).  (ECF No. 88, Watts *Pro Se* Mot.)  Mr. Watts then filed an additional administrative appeal with BOP in February 2021, but he did not receive a response.  (ECF No. 103, Watts Mot. at 3.)  Between February 2021 and May 2021, Judge Johnson provided leave for Mr. Watts to clarify and provide more evidence of his exhaustion of remedies with BOP, to which Mr. Watts responded promptly.  (ECF Nos. 89, Watts Letter dated February 11, 2021; 92, Watts Letter dated March 11, 2021; 96, Watts letter dated March 25, 2021; 97, Watts Letter dated April 17, 2021.)  During this time, Mr. Watts was transferred to USP Atlanta and FTC Oklahoma before arriving at USP Allenwood in Pennsylvania, where he has been incarcerated since June 2021.[3] (ECF No. 103, Watts Mot. at 3.)

---

[3] Mr. Watts is currently in custody at MDC in Brooklyn, New York, where he was

After the government filed a letter on March 31, 2021 (ECF No. 95, Government's Opposition Letter dated March 31, 2021), opposing Mr. Watts's *pro se* motion for compassionate release, Mr. Watts retained counsel with the Center for Constitutional Rights ("CCR") in July 2021.  Mr. Watts's counsel requested leave, which was granted by Judge Johnson, to file an amended motion for compassionate release including supplemental briefing, declarations, and letters of support on November 9, 2021.  (ECF No. 103, Watts Mot.)  Mr. Watts's counsel also filed an amended compassionate release request to the Warden of USP Allenwood on August 18, 2021, out of an abundance of caution, and received no response.  (*Id.* at 3.)

The government does not dispute that Mr. Watts has exhausted his BOP claims.  On December 6, 2021, the government further responded in opposition to Mr. Watts's motion for compassionate release.  (ECF No. 106, Gov. Opp.)  On January 26, 2022, Mr. Watts's counsel filed a reply in response to the government's opposition.  (ECF No. 111, Watts Reply.)

On May 10, 2022, Judge Sterling Johnson scheduled an in-person hearing for Mr. Watts's motion for compassionate release for May 19, 2022.  (Docket Order on May 10, 2022.)  Mr. Watts's counsel subsequently requested an adjournment (ECF No.

---

transferred in 2022, in order to appear at the oral argument, initially scheduled by Judge Johnson, on Mr. Watts's motion for compassionate release.

116), and the hearing was adjourned to June 7, 2022 (Docket Order on May 13, 2022).  On June 3, 2022, Judge Johnson adjourned the hearing to September 13, 2022.  (Docket Order on June 3, 2022.)  On August 16, 2022, after the government requested an adjournment (ECF No. 117), the hearing was adjourned from September 13, 2022, to October 12, 2022 (Docket Order on August 16, 2022.)  On September 20 and 27, 2022, the parties submitted supplemental authority in support of their positions.  (*See* ECF Nos. 118, Watts Supp. Auth.; 120, Gov. Supp. Auth.)

On October 3, 2022, Mr. Watts's case was the undersigned judge.  Due to the reassignment and the Court's pending motion and trial schedule, the Court rescheduled the hearing on Mr. Watts's motion to December 5, 2022.  (Docket Orders dated October 3, 2022; October 31, 2022; November 10, 2022; November 16, 2022.)  On November 25, 2022, the government filed another letter in opposition to Mr. Watts's motion for compassionate release.  (ECF No. 120, Government Letter dated November 25, 2022.)

On December 5, 2022, the Court heard oral arguments regarding Mr. Watts's motion for compassionate release.  The parties were requested to provide the Court with supplemental submissions regarding Mr. Watts's sentencing exposure if he were to be sentenced for the same offenses under the present day

mandatory statutes.  On December 12, 2022, Mr. Watts's counsel submitted supplemental briefing.  (ECF No. 121, Watts Sentencing Mem.).  On December 17, 2022, the government submitted its supplemental briefing.  (ECF No. 123, Government Setencing Mem.)

Both of the parties' submissions calculate current day sentences several decades below the ninety-two years and three months originally imposed on Mr. Watts in 1993.  The government contended at oral argument and in its submissions, that if Mr. Watts were to be sentenced today for the same offenses, his sentencing exposure would be 571 months (or 47 years and 7 months) in prison, but the government's calculation assumes that Mr. Watts would be subject to a mandatory seven-year consecutive enhancement for "brandishing" a firearm under the current 18 U.S.C. § 924(c)(1)(A)(ii).  (*Id.*)  Mr. Watts and his counsel contend that Mr. Watts's sentence today would be between 37 years, 7 months (10 years lower than the government's calculation) and 34 years (13 years, 7 months lower than the government's calculation).  (ECF No. 121, Watts Sentencing Mem. at 1.)  Brandishing was neither charged nor found by the jury. Mr. Watts's counsel disputes the government's application of the mandatory seven-year consecutive "brandishing" enhancements that exist only in the current § 924(c) calculations, and were not

charged in the indictment or included in the jury charges[4] at the time of Mr. Watts's trial.  (ECF No. 20, Superseding Indictment and Grand Jury Charges.)  The jury was not requested to, and did not, make findings regarding brandishment of a firearm.  (*Id.*)  Mr. Watts's counsel also disputes the government's calculation of Mr. Watts's baseline offense level which enhances the value of funds obtained in Mr. Watts's committed robberies through an inflationary calculator.

This Court will frame its analysis according to the offenses charged in the superseding indictment and the facts specifically determined by the jury based on the evidence at trial.  The Court respectfully declines to apply an inflationary calculator to enhance Mr. Watts's baseline offense level above Judge Johnson's determinations at sentencing, based on the jury's verdict.[5]  Consequently, as explained *infra,* at footnote 7, the Court finds that Mr. Watts would have been sentenced

---

[4] Mr. Watts's counsel notes that they do not have access to the jury instructions or verdict forms, but "respectfully suggest that there would have been no reason for the jury to receive an instruction regarding brandishment, given that the counts at issue only required a finding of 'use.'"  (ECF No. 121, Watts Sentencing Mem. At 2, footnote 1.)

[5] *See Alleyne v. United States*, 570 U.S. 99, 103, (2013) ("[A]ny fact that increases the mandatory minimum is an 'element' that must be submitted to the jury.);  *see also United States v. Waite*, No. 07 CR 0003 (LAP), 2022 WL 394702, at *3 (S.D.N.Y. Feb. 9, 2022) ("Although Waite's superseding indictment alleged that a gun was either brandished or fired in the commission of each of the four predicate crimes of violence . . . the jury was not asked to issue a special verdict finding that the guns were brandished or fired.  Consequently, the mandatory minimum consecutive sentence for each would now be five years").

somewhere between 30 to 37 years if he were sentenced today for the offenses charged and of which he was convicted.[6] [7]

Mr. Watts's counsel also argues that Mr. Watts has served more than thirty years, a sentence that is more than sufficient to satisfy the purposes of punishment, deterrence, public safety, respect for the law, and rehabilitation, and that serving another 17 or even 5 years of imprisonment would not serve those purposes. (*Id.* at 5.)  This Court agrees.

## **Legal Standards**

The First Step Act, enacted in December 2018, amended the sentence reduction statute, 18 U.S.C. § 3582(c), the so-called "compassionate release" statute, which provides an exception to the general prohibition against the modification of an imposed term of imprisonment.  The Second Circuit, in *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020), noted that Congress intended the First Step Act to expand, expedite, and

---

[6] The sentencing guidelines Judge Johnson followed in 1993 have since become advisory.  *United States v. Booker*, 543 U.S. 220, 222 (2005) ("[T]he Guidelines [are] effectively advisory, requiring a sentencing court to consider Guidelines ranges . . . but permitting it to tailor the sentence in light of other statutory concerns.")

[7] Taking the lowest of the sentencing guideline range Judge Johnson considered for the crimes committed in 1990, 70 months (5 years and 9 months), and adding the mandatory 25 years Mr. Watts would *now* receive for his five § 924(c) counts amounts to a sentence of 30 years and 9 months.  The Court also notes, however, that because the sentencing guidelines are now advisory and there are no statutory minimum sentences for Mr. Watts's underlying offenses, Mr. Watts has served more than the only mandatory minimum sentence he would be subject to today, the 25 years for the five § 924(c) counts.  *See Dean v. United States*, 581 U.S. 62 (2017) ("Nothing in that language prevents a district court from imposing a 30-year mandatory minimum sentence under § 924(c) and a one-day sentence for the predicate violent or drug trafficking crime, provided those terms run one after the other.")

improve compassionate release.  *See id*. at 235 (citing 164 Cong. Rec. S7774 (daily ed. Dec. 18, 2018) (statement of Sen. Ben Cardin); 164 Cong. Rec. H10346, H10362 (Dec. 20, 2018) (statement of Rep. Jerrold Nadler)) ("Congresspersons called it 'expand[ing],' 'expedit[ing],' and 'improving' compassionate release.").

Pursuant to the First Step Act, defendants may move for "[m]odification of an imposed term of imprisonment" before a federal sentencing court.  18 U.S.C. § 3582(c).  To qualify for relief under Section 3582(c), defendants must show:

> (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier"; (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment; (3) that these reasons outweigh "the factors set forth in section 3553(a) to the extent that they are applicable"; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission."

*United States v. Reid*, No. 05-CR-596(1) (ARR), 2021 WL 837321, at *3 (E.D.N.Y. Mar. 5, 2021) (citing § 3582(c)(1)(A)).  "The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute."  *United States v. Schultz*, 2020 WL 2764193, at *2 (W.D.N.Y. May 28, 2020) (citing *United States v. Ebbers*, 2020 WL 91399, at *4

13

(S.D.N.Y. Jan. 8, 2020)).  The Court finds that Mr. Watts has shown that he is entitled to a sentence reduction under § 3582(c), as set forth below.

The relevant Sentencing Commission policy statement, U.S.S.G. Section 1B1.13, allows the court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction," "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and "the reduction is consistent with this policy statement."  Importantly, however, the Second Circuit's recent decision in *Brooker* clarified that Application Note 1(D) of Guideline Section 1B1.13 does not constrain a district court to consider only the enumerated extraordinary and compelling reasons to justify compassionate release, and is not "applicable" to compassionate release motions brought by defendants in district court, after the Bureau of Prisons has failed to act, pursuant to the First Step Act.  *See Brooker*, 976 F.3d at 236 (noting that, because Guideline § 1B1.13 is not applicable to compassionate release motions brought in district court by defendants under the First Step Act, "Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling.").  Accordingly, the Sentencing Commission's policy statement at Section 1B1.13 does not limit a district court's discretion to

14

consider whether a defendant's reasons are extraordinary and compelling with respect to motions, as here, brought directly by defendants under the First Step Act. *Brooker*, 976 F.3d 228. Courts may consider "the full slate" of arguments that defendants present in support of a sentence reduction, "whether in isolation or combination." *Id*. at 236-37. "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason.'" *Id*. at 238.

Relevant to Mr. Watts, the First Step Act amended 18 U.S.C. § 924(c) and specifically eliminated "the draconian practice of 'stacking' § 924(c) convictions for sentencing purposes in a single prosecution," as occurred in Mr. Watts's case. *United States v. Hayne*s, 456 F. Supp. 3d 496, 502 (E.D.N.Y. 2020) (citing First Step Act § 403(a), Pub. L. 115-391, 132 Stat. at 5221-22, codified at 18 U.S.C. § 924(c)(1)(C)). At the time of Mr. Watts's conviction and sentencing, § 924(c)'s stacking provision "mandated that a defendant convicted of multiple counts of § 924(c) charges was subject to mandatory consecutive" twenty-year sentences "for each subsequent § 924(c) charge." *United States v. Williams*, No. 16-CV-3355 (DRH), 2022 WL 1488695, at *6 (E.D.N.Y. May 11, 2022)(citing *Reid*, WL 837321, at *4)). Had Mr. Watts been

sentenced after passage of the First Step Act, however, his subsequent four § 924(c) convictions, after the first § 924(c) conviction, would have required consecutive mandatory minimum sentences of five years on each of the additional four § 924(c) counts of conviction, rather than twenty years on each of the four § 924(c) counts.

The First Step Act reduces the mandatory minimum sentences for Mr. Watts's firearm offenses which were charged in a single superseding indictment, further authorizing the Court to reduce Mr. Watts's sentence below the eighty-five year minimum to which he was sentenced.  *See Reid*, 2021 WL 837321, at *7 ("§ 3582(c)(1)(A)(i) permits [the court] to reduce [a defendant's] sentence to an amount lower than the mandatory minimum.") (citing *Brooker*, 976 F.3d at 230, 238) (permitting the district court to grant compassionate release to a defendant serving a fifteen-year mandatory minimum sentence)); *see also United States v. Eldridge*, 2 F.4th 27, 30 (2d Cir. 2021) (noting that after the enactment of Section 403(a) of the First Step Act, defendants whose § 924(c) convictions resulted from a single prosecution would no longer be subject to the enhanced statutory minimum at sentencing.).  Moreover, the Second Circuit recently has declared, "We now explicitly hold that a mandatory minimum sentence does not preclude a district court from reducing a term of imprisonment on a motion for compassionate

release," and that "[t]here is no indication in [§ 3582(c)(1)(A)] that compassionate release is not available to inmates sentenced to mandatory minimum terms." *United States v. Halvon*, 26 F.4th 566, 570 (2d Cir. 2022).

Importantly, Section 403 of the First Step Act does not explicitly provide for, nor prohibit, retroactive application and does not provide any automatic or independent relief for those defendants whose sentences involved the stacking of § 924(c) convictions. Instead, a defendant may apply to the district court for any such sentence modification relief under 18 U.S.C. § 3582(c)(1)(A). *United States v. Davis*, No. 21-716, 2022 WL 1320316 (2d Cir. May 3, 2022) (summary order) ("[W]e decline to determine whether . . . the FSA's reduction of the mandatory minimum sentence applicable to [defendant's] offense does *not* constitute an extraordinary and compelling circumstance under § 3582."); *see also Haynes* at 516 ("[Though] a defendant sentenced before the FSA is not *automatically* entitled to resentencing; it does not mean that the court may not or should not consider the effect of a radically changed sentence for purposes of applying § 3582(c)(1)(A)"(internal quotations and citations omitted).); *United States v. Marks*, 455 F. Supp. 3d 17, 25 (W.D.N.Y. 2020), appeal withdrawn, 2021 WL 1688774 (2d Cir. Jan. 5, 2021) ("[T]he First Step Act's elimination of stacking of such offenses is not

retroactive . . . . But it is worth noting that if [the defendant] were sentenced today (or at any time after the effective date of the FSA) for the same offenses, he would not be subject to the stacking provisions of § 924(c)(1)(C) . . . provid[ing] at least some indication of Congress's view of whether such 'stacking' generally produces just and desirable results.")

Courts in the Second Circuit have recently exercised "broad discretion when considering a motion for compassionate release" . . . and may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring." *United States v. Sanchez*, No. 01 CR. 74-2 (PAC), 2022 WL 4298694, at *2 (S.D.N.Y. Sept. 19, 2022) (quoting *Halvon* at 569 (2d Cir. 2022); *Brooker* at 237; *United States v. McCoy*, No. 02 CR. 1372 (PAE), 2022 WL 2981445, at *7 (S.D.N.Y. July 27, 2022)("[C]ourts have widely recognized that the First Step Act's change of law, where combined with other 'extraordinary and compelling' reasons, can constitute sufficient grounds to justify a sentence reduction under § 3582.").  District courts in the Second Circuit have also expressly reduced sentences where the defendant's original sentence was enhanced by the § 924 stacking provision.  *United States v. Ballard*, 552 F. Supp. 3d 461, 467 (S.D.N.Y. 2021)("The Court therefore holds that the First Step Act's elimination of sentence "stacking" under §

924(c) constitutes an extraordinary and compelling circumstance warranting reduction in the sentence of a defendant who was subject to this abolished punishment."); *United States v. Redd*, 2020 WL 1248493 at *8, n.18 (collecting cases regarding the court's authority to reduce a sentence based on the severity of "stacked" § 924(c) sentences).  Indeed, the Honorable Sterling Johnson, who presided over Mr. Watts's trial and imposed the mandatory stacked sentences in this case, more recently has recognized that Courts may consider what sentence could have been imposed, but for the mandatory minimum stacked sentences. *United States v. Viola*, No. 91 CR 800 (S. Johnson), 2021 WL 4592768, at *4 (E.D.N.Y. Oct. 6, 2021) ("The extraordinary and compelling circumstances underlying these district court decisions are fairly uniform . . . [including] the Circuit's invitation to 'consider' what the defendant's sentence would have been but for the mandatory minimums or other changes brought about by the First Step Act . . . and the presence of 924(c) 'stacking.'")

Finally, in considering a sentence reduction, the Court must consider the Title 18, Section 3553(a) sentencing factors as applicable, including, *inter alia*: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for

19

the law, provide just punishment, (3) afford adequate deterrence
to criminal conduct, (4) the need for the sentence imposed to
protect the public from further crimes of the defendant, (5) the
need for the sentence imposed to provide the defendant with
needed educational or vocational training, medical care, or
other correctional treatment in the most effective manner. *See*
18 U.S.C. §§ 3553(a), 3583(d)(1).

### Discussion

Referring to the First Step Act as the "compassionate
release" statute is an incomplete description, as the First Step
Act also provides for sentencing reductions.  18 U.S.C. §
3582(c)(1)(A).  A district court could, for instance, reduce but
not eliminate a defendant's prison sentence, or end the term of
imprisonment, but also impose a significant term of probation or
supervised release in its place.  *Brooker*, 976 F.3d at 237.

Mr. Watts moves this Court for a modification of his
sentence on the following bases: his sentence is unjustifiably
long because of the now prohibited "stacking" of § 924(c)
counts; he was twenty years old when he committed the offenses,
and twenty-three years old and a first-time offender when he was
sentenced to ninety-two years and three months of imprisonment;
he has been rehabilitated during this thirty and a half years in
custody; the COVID-19 pandemic, combined with his medical
condition, presents him with a serious health risk and has also

20

resulted in harsher conditions of confinement; his motion is
supported by the factors in Title 18 U.S.C. Section 3553(a); and
his existing sentence is significantly disparate from other
offenders convicted of other serious offenses and from his co-
conspirator who participated in the very same robberies while
also using a firearm in July and August of 1992, but received a
sentence of ten years.[8]

## I.   Exhaustion of Administrative Remedies

Under the statute, a defendant may bring a motion for
compassionate release upon "fully exhaust[ing] all
administrative rights to appeal a failure of the Bureau of
Prisons to bring a motion on the defendant's behalf or the lapse
of 30 days from the receipt of such a request by the warden of
the defendant's facility, whichever is earlier."  U.S.C. §
3582(c)(1)(A).

Courts in the Second Circuit have been divided over
the proper reading of the statute's exhaustion requirements,
particularly in the context of the global COVID-19 pandemic.
*See United States v. Bolino*, 2020 WL 32461, at *1 (E.D.N.Y. Jan.
2, 2020) ("If the prison warden denies th[e] request, the
prisoner must appeal the denial through the BOP's Administrative

---

[8] Mr. Watts's counsel states that Mr. Daniels received 15 years, but the Court
takes judicial notice of Mr. Daniels's docket and notes that Mr. Daniel's
judgment provides for a sentence of 120 months and 5 years of supervised
release.  (Docket of Shawn Daniels, No. 92-cr-00577-SJ.)

Remedy Procedure."); *cf. United States v. Haney*, 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020) ("[T]he statute does not necessarily require the moving defendant to fully litigate his claim before the agency . . . Rather, it requires the defendant either to exhaust administrative remedies or simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court.") (emphasis in original); *Reid*, 2021 WL 837321, at *4 ("In order to obtain a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), [defendant] must first show that he has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf, or that thirty days have lapsed from the receipt of such a request by the warden of [his] facility, whichever is earlier.") (emphasis added) (internal quotations omitted).

Here, as discussed *supra*, the Court finds that Mr. Watts made multiple efforts to petition the BOP for compassionate release and also waited thirty days before filing his motion before the Court. (ECF Nos. 103, Watts Mot. at 3; 89, Watts Letter dated February 22, 2021; Watts Letter dated March 11, 2021; 93, Watts Letter dated March 35, 2021; 97, Watts Letter dated May 3, 2021.) The late Judge Johnson apparently had accepted Mr. Watts's supplemental *pro se* letters and letters from his counsel on his exhaustion efforts. Furthermore, the

government does not dispute that Mr. Watts has complied with the exhaustion requirements.  Therefore, exhaustion is not at issue.

## II.  The "Full Slate" of "Extraordinary and Compelling Reasons" Warranting Relief, First Step Act, 18 U.S.C. § 3582(c)

It is Mr. Watts's burden to show that there are "extraordinary and compelling reasons" that warrant a modification of his sentence.  18 U.S.C. § 3582(c)(1)(A)(i); *see Schultz*, 2020 WL 2764193, at *2.  The Court has considered the circumstances presented by the record in this case, the global COVID-19 pandemic, "the full slate" of arguments that Mr. Watts presents in support of his request for a sentence reduction, "whether in isolation or combination," and the sentencing factors set forth in Section 3553(a).  *Brooker,* at 236-37.

The Court finds (1) that the "extraordinary and compelling reasons" presented by Mr. Watts warrant a reduction in Mr. Watts's sentence, (2) that these reasons are consistent with "the factors set forth in section 3553(a) to the extent that they are applicable," and (3) that a sentence reduction in Mr. Watts's case "is consistent with applicable policy statements issued by the Sentencing Commission," Second Circuit authority, and the First Step Act.  *Reid*, 2021 WL 837321, at *3 (citing 18 U.S.C. § 3582(c)(1)(A)).  This Court has the discretion and authority to modify Mr. Watts's sentence, to a reduced term of incarceration that is "sufficient, but not

greater than necessary" to serve the interests of justice.   18
U.S.C. § 3553(a).

### A. COVID-19 Pandemic

Courts in this District have found that defendants'
health conditions which pose an "elevated risk of serious
illness or death from COVID-19 can constitute extraordinary and
compelling circumstances in the context of the current
pandemic." *See United States v. Williams*, No. 10-CR-657 (SJ)
(RML), 2021 WL 1648182, at *2 (E.D.N.Y. Apr. 27, 2021)
(collecting cases).   On January 26, 2000, Mr. Watts was
diagnosed with "chronic obstructive pulmonary disease" ("COPD")
suggesting sarcoidosis, "a rare condition that causes small
patches of red and swollen tissue, called granulomas, to develop
in the organs of the body, typically affecting the lungs and
skin".   (ECF Nos. 103, Watts Mot. at 27; 103-11, Watts Medical
Records at 3-6, 13-16, 30, 59.)   The Center for Disease Control
("CDC") places a person with Mr. Watts's conditions at high risk
of suffering life-threatening consequences should he contract
COVID-19, especially considering that Mr. Watts is now fifty-two
years old.   (*Id*.)   Though the CDC does not mention sarcoidosis
specifically, it lists chronic lung diseases, including those,
like sarcoidosis, that "[have] damaged or scarred lung tissue
such as interstitial lung disease" and COPD.   *People with
Certain Medical Conditions*, www.cdc.gov/coronavirus/2019-

ncov/need-extra-precautions/people-with-medical-conditions.html
(last visited Jan. 4, 2023).

Mr. Watts identifies his lung condition, including
COPD, as an exacerbating health condition that places him at a
higher risk if he contracts COVID-19 and offers evidence that
his medical condition "substantially diminishes" his ability "to
provide self-care within the environment of a correctional
facility," and is a condition "from which he . . . is not
expected to recover," if he contracts COVID-19.  U.S.S.G. §
1B1.13 & Application Note 1.  *See United States v. Schultz*, 2020
WL 2764193, at *2 (W.D.N.Y. May 28, 2020) (an "extraordinary and
compelling reason for a sentence reduction under the medical-
condition section of U.S.S.G. § 1B1.13," requires a "terminal
illness" or "a serious condition, impairment, or age-related
deterioration that substantially diminishes his ability to
provide self-care"); *see also United States v. Sterling*, No. 16-
CR-488, 2020 WL5549965, at *1 (S.D.N.Y. Sept. 16, 2020) (finding
defendant with COPD, asthma, and other medical conditions
demonstrated extraordinary and compelling reasons); *United
States v. Hernandez*, No. 10-CR-1288-LTS, 2020 WL 3893513, at *2
(S.D.N.Y. July 10, 2020) (deeming medical conditions including
COPD and obesity to constitute extraordinary and compelling
circumstances).  The Court notes that Mr. Watts contracted
COVID-19 in February 2021, fortunately with "minimal symptoms

noted, voiced, or reported." (ECF No. 103-10, Watts Medical Records at 39.) The Court further notes that there is still developing research on the long-term impacts of those who have contracted COVID-19, especially on those with high-risk medical conditions. Thus, the Court finds that considering the totality of the record, Mr. Watts's medical condition and other factors present extraordinary and compelling circumstances.

Though Mr. Watts is vaccinated against COVID-19 (ECF No. 103-11, Watts Medical Records at 69), the Court acknowledges nationwide reports that being fully vaccinated does not completely eliminate the risk and danger of contracting COVID-19, as variants, breakthrough infections, and infection rates have risen in multiple waves, even where a patient has received boosters. *COVID Data Tracker*, https://covid.cdc.gov/covid-data-tracker/#vaccine-effectiveness (last visited Jan. 4, 2023.) The Court concludes that Mr. Watts's arguments regarding the risks to his health from the COVID-19 pandemic, in combination with the "full slate" of other reasons the Court will discuss below, constitute "extraordinary and compelling" circumstances that warrant a reduction in Mr. Watts's sentence.

### B. The § 924(c) Stacking Provision

"Courts in many districts—including this one—have found that an overly long punishment imposed under the obsolete § 924(c) stacking provision constituted an extraordinary and

compelling reason for sentence reduction." *See Reid*, 2021 WL 837321, at *5 (collecting cases). This Court finds that Mr. Watts's original total sentence of ninety-two years and three months, including his mandatory eighty-five year stacked sentence for the five § 924(c) counts, to be served consecutively to his sentence of 87 months on the other counts of conviction, is among the extraordinary and compelling reasons justifying a reduction of his sentence. Specifically, the Court agrees with Mr. Watts's contentions that the nature and circumstances of his offense, the disparity of his ninety-two years and three months sentence as compared to his co-conspirator, who engaged in identical conduct but received a ten-year sentence, and compared with other defendants nationwide who have committed equally or more serious offenses, justify granting Mr. Watts relief from his current sentence. (ECF No. 121, Watts Sentencing Mem. at 4.)

As discussed *supra*, Mr. Watts was originally sentenced to concurrent sentences of 60 and 87 months for the armed bank robberies, conspiracy to commit armed bank robberies, and the Hobbs Act offenses (shoe store robbery and conspiracy to commit a Hobbs Act robbery). (*See* ECF Nos. 62, Judgment; 86, Statement of Reasons; 103-13, Sentencing Tr. at 6-8; 103-13, Pre-Sentence Report, 24, 34, 43, 52, 60.) Judge Johnson imposed a sentence of 87 months (seven years and three months) based on the top of

27

the recommended guideline range of 70 to 87 months, and then
added the mandatory consecutive sentences of eighty-five years
pursuant to the version of § 924(c) effect in 1993.  (*Id.*)  At
that time, for the five counts of conviction under § 924(c), the
Court was required to impose one 5-year term and four 20-year
terms for each of the four additional § 924(c)(1) counts to be
served consecutively to the 87-month concurrent sentences for
the underlying armed bank robberies, conspiracy to commit armed
bank robberies, Hobbs Act robbery and conspiracy to commit a
Hobbs Act robbery counts.  (*Id.; see also* 18 U.S.C. § 924
(c)(1)(1988).)  Mr. Watts's projected release date in 2072, at
the age of one hundred and two, effectively constitutes a life
sentence, for offenses that Mr. Watts committed over a seven-
week period as a twenty-year-old, first-time offender.  His
sentence would not be required, or imposed, or permitted under
current law.[9]

       In 1993, each of Mr. Watts's four § 924(c) convictions
after the first § 924(c) conviction, were considered

---

[9] The currently applicable § 924(c) provision provides in relevant part:
"Whoever, during and in relation to any crime of violence . . . uses or
carries a firearm, shall, in addition to the punishment provided for such
crime of violence . . . be sentenced to imprisonment for five years . . . .
In the case of his second or subsequent conviction under this subsection,
such person shall be sentenced to imprisonment for twenty years . . . .
Notwithstanding any other provision of law, the court shall not place on
probation or suspend the sentence of any person convicted of a violation of
this subsection, nor shall the term of imprisonment imposed under this
subsection run concurrently with any other term of imprisonment including
that imposed for the crime of violence[.]"  18 U.S.C. § 924(c)(1)(1988).

"subsequent" convictions requiring an extra 20 years each, despite all five of the § 924(c) counts being charged in the same superseding indictment.  18 U.S.C. § 924(c)(1)(1988). Today, subsequent convictions are subject to an extra 25 years (not 20 years), but must be charged in a separate indictment than the first § 924(c) offense.  18 U.S.C. § 924(c)(1)(C)("In the case of a violation of this subsection that occurs after a prior conviction under this subsection has become final, the person shall . . . be sentenced to a term of imprisonment of not less than 25 years. . . ").)  Therefore, if Mr. Watts's original sentencing occurred today, after the elimination the former stacking regime, Mr. Watts's five § 924(c) counts would only be calculated for a term of 5 years each, for a total of 25 years, rather than 85 years.  18 U.S.C. § 924(c)(1)(i) (". . . any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . . be sentenced to a term of imprisonment of not less than 5 years.".)

    In support of his motion for a sentence reduction, Mr. Watts also raises the stark disparity of his sentence as compared to his co-conspirator who committed the same offenses and other defendants who have committed equally or more serious offenses.  As Mr. Watts's counsel notes, the ten-year sentence

of Mr. Watts's co-conspirator in the July and August 1990
robberies was significantly shorter in length and severity than
that of Mr. Watts's ninety-two years and three months sentence.
(ECF No. 121, Watts Sentencing Mem. at 4.)   The Court
recognizes that Mr. Daniels testified against Mr. Watts at
trial, and that the government offered Mr. Daniels a plea, which
resulted in a sentence of 10 years, according to Court records.
(Docket of Shawn Daniels, 92-cr-00577-SJ.)   Nonetheless, as Mr.
Watts's counsel asserts, Mr. Daniels's sentence demonstrates
that the ten-year sentence for Mr. Daniels's identical conduct
and trial testimony served the deterrence, public safety, and
other goals of 18 U.S.C. § 3553(a) for Mr. Daniels's and Mr.
Watts's identical offenses.  (ECF No. 121, Watts Sentencing Mem.
at 4.)  Mr. Watts's sentence of ninety-two years and three
months, when compared to the ten-year sentence of Mr. Daniels,
exemplifies the term "trial penalty," and warrants a sentence
reduction for Mr. Watts.  *See United States v. Holloway*, 68 F.
Supp. 3d 310, 313 (E.D.N.Y. 2014) ("The difference between the
sentencing outcome if a defendant accepts the government's offer
of a plea bargain and the outcome if he insists on his right to
trial by jury is sometimes referred to as the 'trial
penalty.'").[10]

---

[10] The record before the Court does not note whether Mr. Watts was offered a

Finally, the Court takes judicial notice of the United States Sentencing Commission ("USSC") statistics, which indicate that in 2021, the average national sentence imposed for equally or more serious crimes than Mr. Watts's were as follows: the crime of robbery, 104 months (6 years, 9 months); for murder, 244 months (20 years, 4 months); for child pornography, 108 months (9 years); for sexual abuse, 211 months (17 years, 6 months); and for kidnapping, 166 months (13 years, 9 months). *USSC, Table 15, "Sentence Imposed by Type of Crime,"* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2021/Table15.pdf (last visited Jan. 4, 2023); *see also Haynes* at 500 (finding the stacking provision disproportionately high compared to other sentences imposed for arguably more or equally dangerous crimes). Though the Court notes the limited weight of these statistics, which do not disclose nuances in the individual circumstances of these offenses, including, but not limited to criminal histories or judicial discretion in sentencing, the Court finds that Mr. Watts's severe sentence for his very serious offenses represents an unwarranted disparity with sentences for other serious offenses, including the most serious offense of taking a life.

---

plea bargain by the government.

### III. Section 3553(a) Factors and Applicable Policy Statements

Before granting Mr. Watts's motion for sentence reduction, the Court must consider whether Mr. Watts poses "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," U.S.S.G. § 1B1.13(2), and must consider "the factors set forth in section 3553(a)."  18 U.S.C. § 3582(c)(1)(A).  The Court has considered the policy statement and the § 3553(a) factors and finds that they favor reducing Mr. Watts's sentence.

The Court considered the factors set forth in Section 3553(a) including, *inter alia*: "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," "to protect the public" . . . , "to provide the defendant with needed educational or vocational training, [or] medical care," the kinds of sentences available, and the need to avoid unwarranted sentencing disparities.  18 U.S.C. § 3553(a)(1)-(6).  In evaluating whether the Defendant poses a continued danger to the safety of others under the relevant policy statement (U.S.S.G. § 1B1.13(2)), the Court considered the following factors, similar to the § 3553(a) factors: 1) the nature and circumstances of the

offense; 2) the weight of the evidence against the person; 3) the person's history and characteristics; and 4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See Williams*, 2021 WL 1648182, at *3 (citing 18 U.S.C. § 3142(g)).  The Court finds that, like the § 3553(a) factors, the U.S.S.G. § 1B1.13(2) factors also favor granting Mr. Watts's motion.

The Court, as discussed extensively, *supra*, acknowledges the seriousness of Mr. Watts's offenses and the weight of evidence against him, as well as the limited seven-week duration of Mr. Watts's offenses and the young age at which Mr. Watts committed the instant offenses.  The Court also notes that Mr. Watts had no criminal history prior to his instant convictions.  At the time of his original sentencing, Mr. Watts was described as having suffered from the divorce of his parents, absence of his father, and the pressure of being the primary physical, financial, and emotional caretaker of his disabled mother.  (ECF No. 103, Watts Mot. at 4.)  Mr. Watts dropped out of high school at seventeen in order to work various jobs and spend most of his time caring for his disabled mother.  (*Id*.)  In the summer of 1990, when Mr. Watts was twenty years-old and committed the instant offenses for which he was sentenced to over ninety-two years, he and his family were struggling financially and he thought his offenses would

33

alleviate the burdens of his family.  (*Id.* at 5.)  In his August
2021 letter to Judge Johnson, Mr. Watts reflects on his actions
at the age of twenty:

> I had a habit of always pointing the finger
> and blaming everybody else for the
> situations I find myself in, until one day a
> very long time ago, I finally woke up and
> realized that a real man would stop blaming
> everyone else and step up and take
> responsibility for his own actions.  And
> that is what I did . . . . but I've taken
> this time here in prison to grow, to work on
> my attitude and to also change my way of
> thinking, in order to get the tools I need
> to function in society.

(ECF No. 103-3, Watts Letter to the Court ("Watts
Letter.").)

Though the Court acknowledges that "'[r]ehabilitation
... alone shall not be considered an extraordinary and
compelling reason'" to grant Mr. Watts's motion, *Brooker*, 976
F.3d at 238, a defendant's "[rehabilitation] is certainly
relevant to assessing the danger he poses to the community and
'highly relevant to several of the § 3553(a) factors.'"
*Williams*, 2021 WL 1648182, at *3 (citing *Pepper v. United
States*, 562 U.S. 476, 491 (2011).  Mr. Watts's submissions
indicate that he has made significant efforts at rehabilitation
through years of course work, maturity and reflection, and that
he recognizes that he must lead a law-abiding life.  In addition
to his limited BOP disciplinary record over the thirty years he
has been in custody, Mr. Watts has taken over 30 educational

courses and made quarterly small-sum payments of his special
assessment of $ 600, until his obligation to pay the remainder
expired after five years of incarceration, pursuant to 18 U.S.C.
§ 3013(c).  (ECF Nos. 103, Watts Mot. at 9-10; 103-1, Watts
Declaration ¶ 23; 124-125, Parties' Update on Watts Payments.)
According to Mr. Watts, "Specifically, the residential wiring,
OSHA, and commercial driver's license courses were my favorite
because they have the potential to help me access jobs once I am
released.  I also enjoyed the parenting classes because they
helped me keep in tune with my family and understand how to
better connect with my kids."  (ECF No. 103-1, Watts Declaration
¶ 23.)  Mr. Watts has strong family support to ensure that he
will be law-abiding.  Indeed, his plan to live with his sister,
away from the environment in which he was raised and committed
his offenses, reflects his desire to become a productive and
law-abiding citizen.  Thus, the Court finds that Mr. Watts has
been deterred from committing further offenses and endangering
the public safety.

        The Court notes that Mr. Watts's two most recent
infractions at BOP took place respectively this year[11] and in

---

[11] The government's update on Mr. Watts's 2022 infraction, states that he was
in possession of a so-called "stinger," considered to be a hazardous item.
(ECF No. 123, Gov. Sentencing. Mem. at 4-5.)  The government states that Mr.
Watts explained that the object was for re-heating food in prison, and the
government does not dispute Mr. Watts's explanation.  (*Id.*)

2018.[12]   (ECF Nos. 123, Gov. Sentencing Mem. at 4-5; 103, Watts

Mot. at 9-10; 103-10, Watts BOP Disciplinary Records.)   In the

last 30 years, Mr. Watts's disciplinary record lists 24

infractions, with two-thirds of the infractions occurring before

2000, nearly twenty years ago.   Mr. Watts's only disciplinary

infraction involving violence while in prison was in 1993, when

he first entered as a 23-year-old.   (*Id.*)   Mr. Watts's

documented conduct during the past thirty years of his

incarceration reflects an overall maturation and positive

development, and there is no evidence that Mr. Watts presents a

current risk of danger to the safety of others.   *See* U.S.S.G. §

1B1.13 (the Court must consider whether a defendant is a "danger

to the safety of any other person or to the community").

The Court finds that Mr. Watts's continued contact

with his family throughout, and despite, his three decades of

imprisonment is a compelling factor in Mr. Watts's

rehabilitation and re-entry into society.   Mr. Watts has two

biological children and another daughter that he cared for

before his incarceration, who were all under the age of four

years old when Mr. Watts began his incarceration and are now

---

[12] Mr. Watts acknowledges his 2018 infraction was for accepting medication that he was not prescribed, and asserts that he suffers from significant lower back pain from a pre-conviction accident that clinic-distributed ibuprofen does not always alleviate.  (ECF No. 103-1, Watts Declaration ¶ 21.)

fully-grown adults with their own families.  Having maintained

relationships with his children throughout their lives and his

time in prison, Mr. Watts writes:

> What I am mostly looking forward to is
> providing for my family the right way.  I
> grew up in poverty; I came from nothing.  I
> want to be able to provide a better life for
> my family.  I don't want them to have to go
> through the same things I went through. I
> don't want them to feel like they need to
> make the mistakes I made and wind up in
> prison.  I want to leave something for my
> grandchildren when I die.

(ECF No. 103-1, Watts Declaration ¶ 28.)

Mr. Watts states that his family is prepared and

motivated to assist and support him upon his release.  (ECF No.

103, Watts Mot. at 10-14.)  The letters of support written by

Mr. Watts's family corroborate these assertions and indicate

that Mr. Watts has a well-established network of family and

friends to facilitate his reentry into society.  Mr. Watts's

sister, Ms. Evelyn Watts, writes that Mr. Watts has remained her

"absolute best friend in this world" and that he will reside

with her in Pennsylvania, if released.  (ECF No. 103-6, Evelyn

Watts Letter.)  Ms. Evelyn Watts also writes that Mr. Watts

would be able to help take care of her given her disability.

(*Id.*)  She explains that their mother passed away while Mr.

Watts was incarcerated and along with that loss, "[t]hirty years

in prison has matured Charles and he has used his time in prison

to improve himself in every way." (*Id.*)  Ms. Evelyn Watts's

son, and Mr. Watts's nephew, writes, "When we speak on the

phone, I really enjoy speaking to him because he always gives me

the best advice as far as school, relationships, and

communicating go.  I believe the reason he gives such great

advice is because he has taken the time to learn about life from

his time in prison." (ECF No. 103-7, Watts's Nephew Letter.)

        Mr. Watts's daughter, Shadasia Watts, 29 years-old

with two infant children of her own, writes about how her mother

and Ms. Evelyn Watts "managed to keep me and my brother Daevon a

part of my dad's life in spite of his incarceration." (ECF No.

103-4, Shadasia Watts Letter.)  She describes speaking to her

father often and noting his improvement and dedication to

exercise and reading while in prison. (*Id.*)  She also explains

that Mr. Watts took care of her older sister, who had a

different father, as if she were Mr. Watts's own biological

daughter and that "she really misses him as well." (*Id.*)  Ms.

Shadasia Watts details difficult memories of visiting Mr. Watts

in prison, and recalls that at the end of her visits, she would

"always break down and cry . . .  [j]ust seeing him walk through

that back door always broke [her] entire heart," and the impact

that growing up without a father her entire life had on her,

especially during her childhood. (*Id.*)  Ms. Shadasia Watts

states that having Mr. Watts home would be what she has been

waiting for her entire life, and hopes that a "childhood dream was finally coming true." (*Id.*)

Mr. Watts's son, Mr. Daevon Baker, writes about how Mr. Watts "does everything he can to put a smile on [his family's] faces . . . no matter what he may be going through himself. He has a great energy and has tried his best to be a part of our lives even while he is in prison." (ECF No. 103-5, Daevon Baker Letter.) Mr. Baker also expresses how Mr. Watts has inspired him to stay out of trouble by talking about his own experiences. (*Id.*) He writes, "Now that I have a son it's more important than ever for my father to be here in our lives." (*Id.*)

Charlene McRae, who was Mr. Watts's mother's best friend and watched Mr. Watts as a child, writes that she loves Mr. Watts like a son. (ECF No. 103-8, Charlene McRae Letter.) She describes how Mr. Watts took care of her and his mother growing up, and always ran errands for them. (*Id.*) She also writes, "I know he made a mistake and that one mistake cost him all of his adult life and I know he is very sorry for his actions that day and every day." (*Id.*)

Mr. Ronald Gibbons, Mr. Watts's friend of thirty years and the godfather to his children, advises the Court that Mr. Watts will have employment upon his release. (ECF No. 103-9, Ronald Gibbons Letter.) Mr. Gibbons is a co-founder and Project

Manager at Quantum Technology Group ("QTG"), a telecommunication company that contracts with the government to provide different cable and phone wiring services for government facilities. (*Id.*)  Having observed Mr. Watts "become a totally different person" through visits and conversations with Mr. Watts, Mr. Gibbons attests to Mr. Watts's remorse and rehabilitation. (*Id.*)  He explains that Mr. Watts will have employment at QTG as a cable technician in Pennsylvania, where he will be supervised by a direct supervisor and Mr. Gibbons remotely.  (Id.)  Mr. Gibbons also expresses his commitment to meeting with Mr. Watts three times a week by video and supporting his transition back into society.  (*Id.*)  The Court finds that Mr. Watts will have strong family support, a job, and other incentives to live a law-abiding life.

Although Mr. Watts's crimes of conviction are serious, the Court finds that a reduction of his ninety-two years and three months sentence is warranted.  Reducing Mr. Watts's sentence to correspond more closely to the estimated thirty to thirty-seven years sentence he *would have* received without the former mandate of § 924(c) stacking serves the important purposes outlined by the Section 3553(a) sentencing factors. Even the government's calculation of the sentence that Mr. Watts would receive if imposed today, forty-seven years, is approximately half of the ninety-two years and three months

sentence that Mr. Watts received in 1993.  Mr. Watts's reduced
sentence, in addition to his five-year term of supervised
release, during which he must appear regularly for status
conferences with the Court, should "afford adequate deterrence
to criminal conduct" and "protect the public from further crimes
of the defendant[.]"  18 U.S.C. § 3553(a)(2).  The Court finds
that, based on all of the foregoing factors, reducing Mr.
Watts's sentence to bring it into conformity with current law
rather than with an "outdated and unjust sentencing scheme would
'promote respect for the law,' 'provide just punishment for
[his] offense[s],' and fulfill 'the need to avoid unwarranted
sentence disparities among defendants with similar records who
have been found guilty of similar conduct.'"  *See Reid*, 2021 WL
837321, at *6 (citing 18 U.S.C. § 3553(a)(2)(A), (a)(6)).

## Conclusion

The Court grants Mr. Watts's motion to reduce his
sentence to time served since his arrest and incarceration for
the indicted offenses on June 10, 1992.  18 U.S.C. § 3553(a).
Given the thirty and a half years that Mr. Watts has been
incarcerated since June 10, 1992, the evidence of Mr. Watts's
rehabilitation, his youth and first-time offender status when
sentenced, the extraordinarily harsh mandatory sentence of
ninety-two years and three months, his health conditions, and
the full slate of extraordinary and compelling reasons and §
3553(a) factors discussed above, the Court finds that a reduced
sentence of time served and the previously imposed five years of
supervised release sufficiently address the gravity of Mr.
Watts's offenses and meets the goals of sentencing.  All
standard conditions of Mr. Watts's original five-year supervised
release shall remain unchanged.  The Court adds the following
special conditions to Mr. Watts's supervised release: that he
must obtain and maintain verifiable employment, or otherwise
serve ten hours a month of community service in a manner
approved by the Probation Department; that he not possess a
firearm, ammunition, or any destructive device; that he
participate in a mental health program approved by the Probation
Department; and that he submit his person, residence, place of
business, vehicle, or any other premises under his control to a

search on the basis that the Probation Department has reasonable belief that contraband or evidence of a violation of the conditions of release may be found.  Mr. Watts's sentence reduction is reflected in the accompanying amended judgment.

Following his release from federal custody, Mr. Watts shall report for a status conference with the Court in-person or by videoconference, every other month for the first twelve months of supervised release, starting on March 2, 2023 at 10:00 a.m.  Before Mr. Watts is released, to the home of his sister, Evelyn Watts, he shall provide a specific address to Probation.

**SO ORDERED.**

Dated:    Brooklyn, New York
          January 4, 2023

                              /s/ Kiyo A. Matsumoto
                              Hon. Kiyo A. Matsumoto
                              United States District Judge